Ms. Paula Herzmark Executive Director Colorado Department of Local Affairs 1313 Sherman Street, Room 518 Denver, Colorado 80203
Dear Ms. Herzmark:
This is in reply to your letter, of September 10, 1979, requesting an opinion concerning specific problems in the valuation and assessment of mobile homes presented to your office by J. E. Losavio, Jr., district attorney of the Tenth Judicial District, by letter of August 20, 1979. This letter from Mr. Losavio's office along with a letter of September 5, 1979, from Mr. Raymond E. Carper, property tax administrator, in which Mr. Carper advised you of the many problems encountered by treasurers and assessors concerning the valuation and taxation of mobile homes since 1977, were forwarded to this office. Since Mr. Carper's letter merely sets forth numerous problem areas considered by the assessors' and treasurers' associations and asks no specific questions, this opinion responds solely to the questions propounded by Mr. Losavio's office.
QUESTIONS PRESENTED AND CONCLUSIONS
Considering the questions contained in Mr. Losavio's letter, as well as Mr. Carper's delineation of the numerous problems encountered in the collection of ad valorem taxes from delinquent mobile home owners, remedial legislation is necessary to solve some of the problem areas. Nevertheless, this opinion is issued as requested and the questions are answered in the order asked.
1. What protection does the buyer have between the certificate of purchase and the certificate of title? Does the treasurer incur any liability for issuing a certificate of ownership without checking to make sure the mobile home has not been moved?
 My conclusion is "no." Accordingly, if the owner fails to exercise his right of redemption, the treasurer shall, after close of the redemption period, issue a treasurer's certificate of ownership to the purchaser upon receipt of an application from the purchaser. The treasurer would not incur any liability for issuing a certificate without ascertaining the location of the mobile home.
2. How can the treasurer prevent a mobile home owner from selling the unit between the certificate of purchase and certificate of ownership? Is there any way a lien can be placed on the title following the tax sale?
 In response to question 2, it is concluded that under existing statutes, a treasurer, short of civil litigation, cannot prevent a mobile home owner from selling the mobile home between the date of issuance of the certificate of sale and the date of issuance of the certificate of ownership. The possibility does exist that the parties in interest could obtain injunctive relief but it is considered that such litigation would normally not be economically feasible for the counties to pursue. The statutes do not presently authorize the filing of a lien by a purchaser.
3. If the mobile home cannot be located at the time the treasurer is prepared to issue a certificate of ownership, what option does the treasurer have? Can he just refund the money to the buyer?
 In response to question 3, you are advised for the reasons stated above that regardless of the location of the mobile home a purchaser is entitled to receive a certificate of ownership upon request if the owner does not exercise the statutory right of redemption as provided in C.R.S. 1973, 39-10-111. Furthermore, there is no provision permitting the treasurer to refund to the buyer the moneys paid to the county at the sale.
4. If a mobile home is illegally moved to another state, what legal authority does the treasurer have to block a transfer of title or to place a `hold' on the home?
 In reply to question 4, if a purchaser has been issued a certificate of ownership and makes application to the department of revenue for a certificate of title prior to the release of the title to another state, the department could refuse to release the title. Even so, this would be of no benefit to a purchaser if the mobile home has been removed to a state that does not require mobile homes to be titled.
ANALYSIS
Regarding question 1, C.R.S. 1973, 39-5-202 (1978 Cum. Supp.) provides in pertinent part that "mobile homes shall be subject to ad valorem taxation under the provisions of articles 1 to 9 of this title as if they were real property but shall besubject to the provisions of article 10 of this titleconcerning the collection of taxes as if they were personalproperty." (Emphasis added.) The procedure for distraint and sale of personal property is set forth in C.R.S. 1973,39-10-111, and subsection (7), (1978 Cum. Supp.), thereof provides, in part, as follows:
 In all cases of sale, the treasurer shall issue a certificate of sale to each purchaser and such certificate shall be prima facie evidence of the right of the treasurer to make such sale and conclusive evidence of the regularity of the proceedings in conducting and making such sale. Except as provided in subsection (10) of this section with respect to mobile homes, the treasurer's certificate shall transfer to the purchaser all right, title, and interest of the owner in and to the property sold.
Also material in responding to your inquiry is C.R.S. 1973,39-10-111(10) (1978 Cum. Supp.) which reads, as follows:
 (10) A mobile home which is sold under the provisions of this section may be redeemed by the owner thereof within one year after the date of the sale upon payment to the treasurer of the proceeds of the sale, less any surplus returned to the owner under subsection (8) of this section, interest on such amount at the rate of one and one-half percent per month or eighteen percent per annum for the first six months and one percent per month or twelve percent per annum for the remaining period, and all taxes due and payable on the mobile home subsequent to the tax sale. The treasurer shall return such moneys to the purchaser or lawful holder of the certificate of sale. On or before thirty days prior to the close of the redemption period, the treasurer shall notify the owner of the mobile home and any lienholder of record, by personal delivery or by certified or registered mail to his last known address, that a treasurer's certificate of ownership for the mobile home may issue to the purchaser or lawful holder of the certificate of sale at the close of the redemption period unless such payment is made. If the owner has not exercised his right of redemption and after the close of the redemption period, the purchaser or lawful holder of the certificate of sale may apply to the treasurer for a treasurer's certificate of ownership for the mobile home. Upon receipt of such application, the treasurer shall issue a treasurer's certificate of ownership to such purchaser or holder, and such certificate of ownership shall transfer to him all right, title, and interest in and to the mobile home. Such certificate of ownership shall, upon application, entitle the purchaser or holder thereof to a certificate of title to be issued and filed pursuant to part 1 of article 6 of title 42, C.R.S. 1973.
Accordingly, if the owner fails to exercise his right of redemption, the treasurer shall, after close of the redemption period, issue a treasurer's certificate of ownership to the purchaser upon receipt of an application from the purchaser. The treasurer would not incur any liability for issuing the certificate without ascertaining the location of the mobile home.
Regarding question 4, the above cited statutes clearly reveal that a mobile home will be under distraint at the time of sale and until the treasurer issues a certificate of sale to the purchaser. However, ownership does not pass to the purchaser until a certificate of ownership is issued by the treasurer upon request of the purchaser after the owner fails to exercise his right of redemption.
Specifically, in responding to question 4, it is the opinion of this office that existing statutes provide no protection to a buyer between the issuance of the certificate of sale and the issuance of a certificate of ownership. At most, it is believed that a purchaser would possibly have a chance of action against the owner. Furthermore, it is believed that, before issuance of a certificate of ownership, the treasurer is under no obligation to ascertain whether the mobile home has been moved and failure to do so creates no liability as C.R.S. 1973, 39-10-111(10) pertinently states that "Upon receipt of such application, the treasurer shall issue a treasurer's certificate of ownership to such purchaser or holder . . . ." This leaves no discretion in the treasurer. The statute provides that he shall
issue the certificate if the right of redemption is not exercised and the purchaser or holder requests that the certificate be issued.
SUMMARY
This opinion answers inquiry concerning the duties and liability of a county treasurer in the sale of mobile homes for delinquent taxes to include issuance of certificates of purchase and certificates of title. In conclusion, it is readily apparent, as has been recognized by the treasurers and assessors of this state, that corrective legislation is needed to correct deficiencies in present statutes.
Very truly yours,
 J.D. MacFARLANE Attorney General
MOBILE HOMES TAXATION AND REVENUE TITLE TO PROPERTY
C.R.S. 1973, 39-5-202
C.R.S. 1973, 39-10-111(7) C.R.S. 1973, 39-10-111(10)
LOCAL AFFAIRS, DEPT. OF Property Taxation, Div. of
This opinion answers inquiry concerning the duties and liability of a county treasurer in the sale of mobile homes for delinquent taxes to include issuance of certificates of purchase and certificates of title.